# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DANIEL CAMPBELL;

    Plaintiff,

vs.

AMERICAN MORTGAGE CONSULTANTS, INC., FIVE MILE CAPITAL PARTNERS, LLC., AND DML HOLDINGS, INC.;

    Defendants,

Case No.:

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, **Daniel Campbell** by and through the undersigned counsel, sues, Defendants, **American Mortgage Consultants, Inc., Five Mile Capital Partners, LLC.,and DML Holdings, Inc.**; pursuant to Federal Statute 29 U.S.C. 216 of the Fair Labor Standards Act (the "FLSA") and state as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff, Daniel Campbell ("Campbell or Plaintiff"), bring this action for violation of federal wage and hour laws.

2. Pursuant to policy and plan, the Plaintiff is/was unlawfully misclassified by Defendants as exempt from laws requiring overtime compensation, but was entitled to overtime compensation.

3. In this pleading, "Defendants" means "defendants and each of them" and refers to the

defendants named in the particular claim for relief in which the word "Defendants" appears. Defendants include, American Mortgage Consultants, Inc. ("AMC"), Five Mile Capital Partners, LLC. ("Five Mile"), and DML Holdings, Inc. ("DML").

4. The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiff bear the burden of pleading, proof, or persuasion. Plaintiff reserve all rights to plead in the alternative.

## JURISDICTION AND VENUE

5. This Court has original federal question jurisdiction conferred by 28 U.S.C § 1331 because this case is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et. seq. (the "FLSA").

6. Venue is proper in this District because Defendants' principle offices are located in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District. Venue is proper in this District because there is personal jurisdiction in this District pursuant to Florida's 'long-arm' statute, F.S. 48.193, as Defendants have conducted substantial, continuous and systematic commercial activities in this District.

## THE PARTIES

### The Plaintiff

7. **Plaintiff, Daniel Campbell,** is a resident of Hillsborough County Florida. Campbell was employed as a Production Employee by Defendants from January 2006 through January 2008, under the title Underwriter at the Tampa Office location. At all times material hereto,

Campbell worked in excess of forty (40) hours per workweek, without receiving overtime compensation as required by federal law.

**The Defendants**

8. **Defendant, Five Mile Capital Partners, LLC,** is a Delaware corporation with its principle place of business at 3 Stamford Plaza, 301 Tresser Blvd. 9th Floor, Stamford, Connecticut, 06901. Five Mile is an asset management company specializing in real estate debt products, structured finance, asset-based lending and financial services products, offered to investors and the financial community nationwide.

9. Upon information and belief, Five Mile is an enterprise engaged in interstate commerce with gross sales in excess of $500,000.00, and Five Mile is the sole owner of AMC.

10. Five Mile formed the wholly owned AMC in December 2008 for the purpose of perfecting an asset purchase agreement and defacto merger by and between Five Mile, David M. Leahy and American Mortgage Consultants, Inc., an Illinois corporation (now known DML Holdings, Inc.).

11. Upon completion of the defacto merger and acquisition, Five Mile directly and indirectly through AMC, maintained seemless continuity of American Mortgage Consultants, Inc., an Illinois Corporation's business; by continuing substantially all of the mortgage based analytic services previously offered; maintaining substantially the same business locations; maintaining substantially all of the existing employees, supervisors, and managers; and by maintaining the wages, hours and working conditions of all Production Employees.

12. Five Mile utilizes its common interlocking directors and corporate officers with AMC, as

well as other agents and persons to exercise direct and indirect control over the wages, hours and working conditions of Plaintiff and similarly situated Production Employees.

13. Pursuant to the exercise of common control and ownership of AMC, Five Mile is an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203.

14. Upon information and belief, Five Mile was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. [1]

15. Upon information and belief, Five Mile acted pursuant to and within the scope of the relationships alleged above, so that Five Mile knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

16. **Defendant, American Mortgage Consultants, Inc.,** is a Delaware corporation with its principle place of business at 12467 Telecom Drive, Tampa, Florida 33637. AMC is a wholly owned subsidiary entity of Five Mile Capital Partners. AMC provides mortgage related analytics services to financial institutions nationwide.

17. AMC is a corporate entity formed in December 2008 for the purpose of perfecting an asset purchase agreement and defacto merger by and between Five Mile, David M. Leahy and

---

[1] See Chao v. Concrete Management Resources, L.L.C., 2009 WL 564381 (D.Kan.) and Steinbach v. Hubbard, 51 F.3d 843 (9th Cir.1995) holding that that successorship liability exists under the FLSA.

American Mortgage Consultants, Inc., an Illinois corporation (now known DML Holdings., Inc.).

18. Upon information and belief, AMC is an enterprise engaged in interstate commerce with gross sales in excess of $500,000.00.

19. AMC operates offices in Tampa, Florida and Libertyville, Illinois, and conducted business nationwide as well as in the Middle District of Florida.

20. AMC employs and/or employed Plaintiff and similarly situated Production Employees and exercises control over the wages, hours and working conditions of Plaintiff and similarly situated Production Employees.

21. Upon information and belief, AMC was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. [2]

22. Upon information and belief, AMC acted pursuant to and within the scope of the relationships alleged above, so that AMC knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

23. **Defendant, DML Holdings, Inc.,** is an Illinois corporation with its principle place of business at 316 Evergreen Court, Libertyville, Illinois, 60048.

24. Prior to December 31, 2008, DML was formerly known as American Mortgage Consultants,

---

[2] See Chao v. Concrete Management Resources, L.L.C., 2009 WL 564381 (D.Kan.) and Steinbach v. Hubbard, 51 F.3d 843 (9th Cir.1995) holding that that successorship liability exists under the FLSA.

Inc., an Illinois Company.

25. DML as American Mortgage Consultants, Inc., an Illinois Company, provided mortgage related analytical services to the financial industry nationwide.

26. DML as American Mortgage Consultants, Inc., an Illinois Company, operated offices in Tampa, Florida and Libertyville, Illinois, and conducted business nationwide as well as the Middle District of Florida.

27. At all relevant times through December 2008, DML as American Mortgage Consultants, Inc., an Illinois Company, employed Plaintiff and similarly situated Production Employees, and exercised control over the wages, hours and working conditions of Plaintiff and similarly situated Production Employees.

28. Upon information and belief, at all relevant times, DML was engaged with some or all other Defendants, in an enterprise engaged in interstate commerce with gross sales in excess of $500,000.00.

**FACTS COMMON TO ALL COUNTS**

29. Plaintiff hereby consents to sue Defendants under FLSA § 216.

30. AMC is an ongoing business concern which provides mortgage related analytics services to financial institutions nationwide.  AMC operates out of two main offices in Tampa, Florida and Libertyville, Illinois.

31. Prior to December 29, 2008; AMC was owned and operated by DML Holdings Inc., an Illinois Corporation.  ("DML" was formerly known as American Mortgage Consultants, Inc., who changed its name on December 31, 2008). After December 29, 2008, AMC was owned

and operated by American Mortgage Consultants, Inc., (a Delaware Company) and Five Mile Capital Partners, LLC., ("Five Mile").  (Together, AMC, DML and Five Mile are commonly referred to as the "Defendants").

32. AMC's core business is and has always been to perform due diligence analytics on residential, commercial, auto, student and consumer lending products for financial institutions.  AMC utilizes a proprietary Due Diligence and Compliance software system known as TIGRE to generate reports for its customers.   These reports are the end product that are used by the financial institutions and rating agencies to value, rate and analyze the bundles of lending products.

33. To generate these reports, AMC employs "Production Employees" to enter the data provided by AMC's clients into the TIGRE database.  The Production Employees are utilized to perform several (often interchangeable) job duties  ("Production Positions") depending upon the client's needs as follows:

34. **Underwriters.**  The job of an AMC underwriter is to perform data entry into the TIGRE system according to specific client direction and TIGRE system tolerances.

35. **Quality Controller.**  The job of an AMC Quality Controller is to double check or proof read the loans or "files" entered by underwriters and pay history/compliance analysts to ensure that the data entered is within the tolerances of the client, and/or to determine if there is obvious clerical error by the underwriter.  All questions and determinations of data that is questionable or non-compliant to the technical specification and directions were referred to the Senior Vice President of Due Diligence Operations and the Senior Vice President of Sales.

36. Neither of the above Production Positions requires any advanced degree; financial certifications or other specialized education; and in fact, new employees could be trained to perform the data entry/review described above in as little as one day.  This is due in part to the highly rigid procedures and guidelines used in the TIGRE system.  As a result, none of the Production Employees exercised *any* independent discretion in the performance of their jobs, and all questions about non-conforming data and all matters of discretion were directed to AMC's Vice Presidents of Operations.

37. Upon information and belief, Defendants employ and have employed hundreds of Production Employees within the relevant period.

38. During their employment, Plaintiff performed data analysis and data entry on bundles of loans and loan based financial products pursuant to Defendants' proprietary due diligence software ("TIGRE") according to well-established techniques and procedures contained in the software, and pursuant to closely prescribed limits imposed by manuals and managerial guidelines.

39. Plaintiff did not exercise discretion or independent judgment with respect to the performance of their duties.

40. All matters of discretion or deviation from the established policies and procedures were/are directed to Defendants' senior management.

41. Plaintiff was required to work a regularly scheduled forty (40) hour workweek regardless of the amount of work available.

42.  Plaintiff was paid a salary based expressly upon the hourly wages for a scheduled forty (40) hour work week.

43. Plaintiff was regularly required to work in excess of forty (40) hours during any given week.

44. Defendants improperly misclassified Plaintiff as an "exempt employee" and failed to properly compensate Plaintiff for hours worked in excess of forty hours during any given week as required by the FLSA.

45. Plaintiff sustained substantial losses from Defendants' failure to properly pay overtime compensation.

46. At all relevant times, the unlawful conduct described in the foregoing allegations, was willfully enacted by Defendants' corporate management who authorized and implemented the above unlawful practices and/or have ratified the actions thereafter in order to enhance corporate profitability, and reduce labor costs.

## COUNT I

### Claim for Relief for Violation of §207 of the FLSA

47. The Plaintiff re-allege and incorporate by reference paragraphs 7 through 46 of this Complaint as if fully restated herein.

48. Upon information and belief, the Defendants have been and continue to be an "employer" engaged in interstate "commerce" within the meaning of 29 U.S.C. §203. At all relevant times, each Defendant has employed Plaintiff within the meaning of the FLSA. At all relevant times, each Defendant has had gross operating revenues in excess of $500,000.

49. Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

50. At all relevant times, Defendants willfully failed to pay Plaintiff and similarly situated Production Employees overtime compensation at a rate of one and a half times their regular hourly rate for hours worked in excess of forty (40) hours worked in any given workweek.

51. At all relevant times, Defendants have and continue to operate under a decision, policy and plan to willfully misclassify Plaintiff as exempt employees; willfully failed and refused to pay Plaintiff at time and a half rates for work in excess of forty (40) hours per workweek; and to willfully fail to maintain adequate employment records as required by the FLSA.

52. As a result of the Defendants' unlawful acts, Plaintiff have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages in amounts equal to the overtime due, prejudgment interest, attorneys fees and costs and other compensation pursuant to 29 U.S.C. §216(b) and such other legal and equitable relief as this Court deems just and proper.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request the following relief:

 a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

 b. That the Court find the Defendant violations of the FLSA were willful;

 c. That the Court award the Plaintiff's overtime compensation for previous hours worked in excess of forty (40), for any given week during the past three (3) years, AND liquidated damages of an equal amount to the unpaid overtime compensation;

d. That the Court award Plaintiff's costs of action incurred herein, including expert fees;

e. That the Court award Plaintiff's attorneys fees, including fees pursuant to 29 U.S.C. §216 and other applicable statutes;

f. That the Court award Plaintiff's pre-judgment and post-judgment interest as provided by law; AND

g. Any other legal and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated this 15th of July 2010.

Respectfully Submitted,

_____

**Benjamin L. Williams**
FL Bar No: 0030657
**Williams Law P.A.**
Attorney for Plaintiff
2202 N. West Shore Blvd.,
Suite 200
Tampa, Florida 33607
Tel: (813) 639-7540
Fax: (813) 333-7404